UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERESA ROSE M.,

                            Plaintiff,                                6:20-CV-6540Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #15.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on October 17, 2016, alleging disability beginning August 17, 2015, at the age of 48, due to bilateral knee pain, panic attacks, anxiety, hip pain, bilateral osteoarthritis in both knees, wrist joint pain, asthma, allergies, edema and swelling, depression, and a broken bone in her elbow. Dkt. #11, pp.56, 99-100.

On April 29, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Michael Smith, at an administrative hearing before

Administrative Law Judge ("ALJ"), Brian LeCours. Dkt. #11, pp.54-97. Plaintiff testified that she graduated high school and completed four years of college. Dkt. #11, p.58. She lives in an apartment with her husband. Dkt. #11, p.58. She last worked in 2011, with experience as a family service worker at the Head Start Program and as a community specialist assisting individuals with disabilities with everyday living. Dkt. #11, pp.58-61. Plaintiff broke her right elbow in 2015, which causes pain up her arm, and experiences neck and shoulder pain with muscle spasms. Dkt. #11, pp.63 & 66. She takes Tylenol and uses ice and heat for pain and has attended physical therapy. Dkt. #11, pp.64-67. She also experiences constant right knee pain for which she has been prescribed Lyrica. Dkt. #11, pp.70-71. She wears a knee brace and uses a cane for stability. Dkt. #11, pp.73-74. During the relevant time frame for her disability application, *to wit*, 2015-2016, plaintiff testified that she could climb stairs with pain and stand or walk for about 30 minutes at a time. Dkt. #11, pp.78-79. If she was on her feet too long, her knee would lock and she would fall. Dkt. #11, p.79. If she sat for too long, her left hip and upper back would bother her. Dkt. #11, pp.80-81. She would elevate her legs in a recliner for 15-20 minutes at a time to address swelling in her legs. Dkt. #11, p.81. Driving was difficult because it was painful to turn her head. Dkt. #11, p.84.

When asked to assume an individual with plaintiff's age, education and past work experience who could perform the full range of sedentary unskilled work but was not able to crawl, climb ladders, ropes or scaffolds and was limited to occasional kneeling, crouching, climbing of ramps and stairs, overhand reaching with the right upper extremity, balancing and exposure to extreme cold and pulmonary irritants and who required a cane for walking more than 15 minutes, the VE testified that plaintiff

could no longer perform her past work, but could work as a ticket counter, call out operator or assembler. Dkt. #11, pp.91-93. If such an individual needed to stand for ten minutes after 45 minutes of sitting or was limited to occasional reaching and fingering with her dominant right hand, the VE testified that she would not be able to maintain employment. Dkt. #11, p.94.

The ALJ rendered a decision that plaintiff was not disabled on May 24, 2019. Dkt. #11, pp.11-27. The Appeals Council denied review on June 1, 2020. Dkt. #11, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 27, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant seeking SSI must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity between the alleged onset date of August 17, 2015 and her date last insured ("DLI"), on December 31, 2016; (2) plaintiff's allergic rhinitis, arthritis in the knees, asthma, bursitis in the hips, degenerative changes in the right shoulder, status post right radial head fracture, generalized anxiety disorder, panic disorder and unspecified depressive disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[1] with the following limitations: cane required for ambulation in excess of fifteen minutes, frequent balancing, occasional climbing of ramps and stairs, but never ladders, ropes or scaffolds, occasional kneeling and crouching but no crawling, occasional reaching overhead with right arm, occasional exposure to extreme cold and pulmonary irritants, and simple, unskilled tasks that require little to no judgment and can be learned on the job in short amounts of time; and (5) plaintiff was capable of working as a as a ticket counter, call out operator, and assembler, each of which are unskilled, sedentary exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #11, pp.16-27.

Physical RFC

Plaintiff argues that the ALJ failed to afford controlling weight to the opinion of her treating orthopedist, Dr. Little, and treating physician, Dr. Dlugozima,

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

each of which treated plaintiff throughout the relevant time period. Dkt. #12-1, pp.18-20. To the extent that the ALJ questioned whether those opinions related to the relevant time period, plaintiff argues that the ALJ was required to obtain clarification from them. Dkt. #12-1, p.20. Alternatively, plaintiff argues that the ALJ should have requested retrospective assessments from Dr. Little and Dr. Dlugozima. Dkt. #12-1, pp.23-25. Plaintiff further argues that, because her conditions were degenerative, medical records post-dating her DLI should have been considered in assessing her RFC. Dkt. #12-1, pp.21-22. More specifically, plaintiff argues that it was error for the ALJ to fail to consider plaintiff's diagnosis of cervical spondylosis simply because that condition was not diagnosed until an MRI obtained after her DLI. Dkt. #12-1, p.21. Plaintiff also argues that the ALJ failed to consider treatment received by Dr. Little's physician's assistant, David Paniccia. Dkt. #12-1, pp.22-23.

The Commissioner responds that the ALJ properly assigned little weight to Dr. Little's opinion of April 12, 2018 because Dr. Little specifically referenced his treatment note of April 2, 2018, which was more than a year after the date last insured, as support for that opinion. Dkt. #14-1, p.5. Moreover, the Commissioner argues that medical records immediately following plaintiff's DLI do not contradict the ALJ's determination that plaintiff was restricted to sedentary work, with additional limitations. Dkt. #14-1, pp.6-8. The Commissioner argues that there was no need for retrospective opinions because the record was sufficient to render a decision supported by substantial evidence. Dkt. #14-1, pp.11-14. The Commissioner also notes that the ALJ extensively referenced PA Paniccia's treatment notes. Dkt. #14-1, pp.8-11.

Plaintiff replies that it was incumbent upon the ALJ to contact her treating physicians to clarify the time frame of their medical opinions. Dkt. #16, p.1. Plaintiff argues that the etiology of many of the limitations referenced in the opinions of Dr. Little and Dr. Dlugozima were present prior to her DLI. Dkt. #16, pp.3-4. Instead of requesting a retrospective analysis from these medical providers, plaintiff argues that the ALJ improperly interpreted the medical evidence to determine plaintiff's functional limitations prior to her DLI. Dkt. #16, pp.4-5.

Contrary to plaintiff's argument, the ALJ extensively referenced treatment records from PA Paniccia throughout his assessment of plaintiff's RFC. Dkt. #11, pp.21-22. PA Paniccia monitored the healing of plaintiff's elbow fracture through her return to full activities on November 30, 2015 and administered cortisone injections to treat mild degenerative joint disease in her right knee on September 10, 2015 and October 6, 2016 and in her left knee on June 20, 2016 and October 24, 2016. Dkt. #11, pp.381-394, 398 & 409. Throughout his treatment, PA Paniccia observed normal gait, ability to get on the examination table without difficulty and normal range of motion. Dkt. #11, pp. 387, 392, 398, 409.

Moreover, the ALJ extensively referenced treatment records from Dr. Little for the relevant time period, including Dr. Little's treatment of plaintiff in December of 2016, the same month as her DLI. Dkt. #11, p.23. With respect to plaintiff's right shoulder pain, Dr. Little diagnosed rotator cuff tendinitis on April 18, 2016 and subsequently recommended an MRI to discern whether plaintiff was suffering from a

small rotator cuff tear. Dkt. #11, p.412. On December 16, 2016, Dr. Little observed diffuse tenderness about plaintiff's knees, but noted that she "was up on the exam table without much effort." Dkt. #11, p.414. Her range of motion was well past 100 degrees of flexion with full extension. Dkt. #11, p.413. Dr. Little advised plaintiff to continue to strengthen her knees. Dkt. #11, p.414.

As for Dr. Dlugozima, treatment records from August 5, 2016 for complaints of swollen feet and knees revealed no swelling in any of the joints. Dkt. #11, p.497. She was observed to have slight swelling of both ankles on August 17, 2016 and was diagnosed with edema. Dkt. #11, pp.498 & 500. On November 15, 2016, plaintiff complained of constant pain in her left hip and was prescribed a steroid for a diagnosis of bursitis after x-rays revealed "only mild arthritis." Dkt. #11, p.443.

These records are consistent with the internal consultative examination of plaintiff by Rita Figueroa, M.D., on January 26, 2017. Dkt. #11, pp.424-428. Dr. Figuroa observed full flexion, extension and lateral flexion of the cervical and lumbar spine bilaterally, and full rotary movement bilaterally. Dkt. #11, pp.426-427. Dr. Figueroa also observed full range of motion in the shoulders, elbows, forearms, wrists, hips and ankles bilaterally. Dkt. #11, p.427. Plaintiff's knee flexion/extension was 75 degrees, with edema observed bilaterally. Dkt. #11, p.427. An x-ray of the right knee dated January 31, 2017 revealed mild degenerative joint disease. Dkt. #11, p.429. Dr. Figueroa opined that plaintiff would have moderate limitation with kneeling, crawling, squatting, walking on inclines and climbing ladders. Dkt. #11, p.427. Dr. Figueroa

further opined that plaintiff would have a moderate limitation for prolonged walking and standing, but no limitation for sitting. Dkt. #11, pp.427-428. Dr. Figueroa observed no limitation to activities of fine motor acuity. Dkt. #11, p.428. The ALJ afforded Dr. Figuroa's opinion significant weight because clinical observations supported her findings, which were consistent with the medical evidence of record. Dkt. #11, p.24.

On April 12, 2018, Dr. Little completed a Medical Source Opinion Physical Form indicating that plaintiff's pain would constantly interfere with the attention and concentration required to perform even simple work tasks and that plaintiff could never lift less than ten pounds or sit and stand for more than fifteen minutes at a time or more than 2 hours total in an 8-hour work day. Dkt. #11, pp.432-433. He explained that plaintiff has severe degenerative changes of the spine and bilateral knee osteoarthritis, although he noted that he was not the treating physician for her back pain.[2] Dkt. #11, pp.432-433. With respect to plaintiff's prognosis, Dr. Little referenced a treatment note from April 2, 2018 expressing concern over the reliability of a normal MRI of plaintiff's left knee given her continued symptoms and observing that plaintiff walked with a slight limp and exhibited range of motion of about 95 degrees. Dkt. #11, pp.434-35. The ALJ afforded Dr. Little's opinion little weight because the medical evidence prior to December 31, 2016 was inconsistent with the degree of limitation assessed and

---

[2] Dr. Little prescribed an MRI of the cervical spine which was conducted on January 30, 2017 and revealed cervical spondylosis C3-4 through C6-7 with mild spinal stenosis. Dkt. #11, p.544. Plaintiff presented for initial evaluation of her neck pain with Kenessa Edwards, M.D., on March 17, 2017. Dkt. #11, p.506. Dr. Edwards noted that plaintiff was able to perform Activities of Daily Living without Assistance and recommended trigger point injections. Dkt. #11, pp.507 & 510.

because Dr. Little's reference to the 2018 treatment note suggested that his opinion referenced plaintiff's condition subsequent to her DLI. Dkt. #11, p.25.

Plaintiff's primary care physician, Maureen Dlugozima, M.D., completed a medical source opinion form dated February 5, 2019 indicating that plaintiff can never carry any weight in a competitive work situation, can sit and stand/walk less than 2 hours in an 8-hour workday, and must change positions every fifteen minutes. Dkt. #11, pp.812-813. Dr. Dlugozima also opined that pain significantly impairs plaintiff's daily functioning. Dkt. #11, p.813. The ALJ afforded little weight to Dr. Dlugozima's opinion because the medical evidence prior to December 31, 2016 was inconsistent with the degree of limitation she assessed. Dkt. #11, p.25.

Although the regulations relating to evaluation of medical evidence for disability claims have been amended to, *inter alia*, eliminate the treating physician rule, plaintiff's application for disability was filed on October 17, 2016, which is prior to the March 27, 2017 effective date of the amendments. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed.Reg.5844-01, at *5844 (Jan. 18, 2017). Thus, where a treating physician's opinion, including a retrospective opinion,[3] is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003);

---

[3] "Retrospective diagnoses and opinions are those from a treating physician that relate to a time period in the past, including periods when the physician was not the treating source." *Perrone v. Saul*, No. 3:17-CV-125, 2019 WL 4744820, at *5 (D. Ct. Sept. 30, 2019) (internal quotation omitted).

*White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), *quoting* 20 C.F.R. § 404.1527(c)(2).

The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). Thus, the opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability).

The ALJ provided sufficient reasons for affording the opinions of Dr. Little and Dr. Dlugozima less than controlling weight. Dr. Little's opinion is based upon treatment notes more than fifteen months after plaintiff's DLI and Dr. Dlugozima's opinion, which was rendered more than 25 months after plaintiff's DLI, fails to specify

any time frame for her opinion. In contrast, the consultative opinion, which contains objective observations which are generally consistent with the treatment notes of Dr. Little, Dr. Dlugozima and PA Paniccia for the time period prior to plaintiff's DLI, was based upon an examination of plaintiff one month after plaintiff's DLI and within a week of the MRI revealing cervical spondylosis C3-4 through C6-7 with mild spinal stenosis. Thus, the ALJ provided sufficient reasons for affording the consultative opinion greater weight than the opinions of plaintiff's treating physicians. *See Wiebicke v. Astrue*, No. 10 Civ. 3371, 2012 WL 2861681, at *17-18 (S.D.N.Y. July 2, 2012) (Even if ALJ should have sought clarification as to whether treating physician's opinion applied to the relevant time period, other evidence of record, including treating physician's treatment notes from the relevant time period, contradicted that opinion and justified the ALJ's determination to afford treating physician's opinion little weight). Accordingly, the ALJ's determination that plaintiff was capable of performing sedentary work with additional restrictions as of her DLI is supported by substantial evidence.

Mental RFC

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's ability to adapt to stress in the workplace and that the ALJ's restriction to simple, unskilled tasks was insufficient to address her history of panic attacks. Dkt. #12-1, pp.25-29.

The Commissioner responds that the ALJ appropriately relied upon the opinion of the consultative examiner to determine that plaintiff was capable of unskilled work. Dkt. #14-1, pp.14-16.

The ALJ afforded significant weight to the opinion of consultative psychiatric examiner Yu-Ying Lin, Ph.D. Dkt. #11, p.24. Dr. Lin examined plaintiff on December 20, 2016, the same month of her DLI. Dkt. #11, p.419. Plaintiff reported symptoms of anxiety and depression and occasional confusion. Dkt. #11, pp.419-420. Dr. Lin observed that plaintiff's attention and concentration appeared to be mildly impaired due to nervousness and physical pain. Dkt. #11, p.421. She further observed that plaintiff appeared to be mildly to moderately impaired due to physical pain and distractibility. Dkt. #11, p.421. Dr. Lin opined that plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, make appropriate decisions, and relate adequately with others without limitation. Dkt. #11, pp.421-422. She was mildly limited in maintaining attention and concentration and moderately limited in appropriately dealing with stress. Dkt. #11, pp.421-422. Dr. Lin opined that plaintiff's difficulties were caused by stress-related problems, but that her psychiatric problems did not appear to be significant enough to interfere with her ability to function on a daily basis. Dkt. #11, p.422.

Dr. Lin noted that plaintiff had been seeing a therapist for four years. Dkt. #11, p.419. Plaintiff's mental health records reveal that plaintiff participated in and benefitted from individual cognitive behavioral therapy and an anxiety support group. Dkt. #11, pp.282-326 & 623-639. Despite acknowledged symptoms of anxiety and depression, plaintiff's mental status exams were consistently observed as within defined limits. Dkt. #11, pp.282-326 & 623-639. K. Lieber-Diaz, Psy. D., reviewed plaintiff's medical records, including the consultative psychiatric report, and opined that plaintiff

was moderately limited in her ability to maintain attention and concentration for extended periods and to understand, remember and carry out detailed instructions, but would be capable of unskilled work on a sustained basis. Dkt. #11, p.107. In as much as courts within the Second Circuit have repeatedly held that even marked limitations in mental functioning, including a marked limitation in ability to deal with stress, can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks, the ALJ's determination that plaintiff's moderate limitations in her ability to appropriately deal with stress could be addressed by limiting her to simple, unskilled tasks that require little to no judgment and can be learned on the job in short amounts of time is sufficient to address plaintiff's mental limitations. *See, e.g., Kya v. Comm'r of Soc. Sec'y*, 506 F. Supp.3d 159, 167 (W.D.N.Y. 2020).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**            March 10, 2022**

                                               <u>s/ H. Kenneth Schroeder, Jr.</u>
                                               **H. KENNETH SCHROEDER, JR.**
                                               **United States Magistrate Judge**